## Southern Railway Company v. Commonwealth, By, etc.

## Southern Railway Company v. Commonwealth, By, etc.

(Decided June 13, 1924.)

## Appeals from Woodford Circuit Court.

1. Constitutional Law—Taxation—Assessing Railroad Franchise in State Upon Mileage Basis Held Not Violative of Fourteenth Amendment.—It would not be violative of Constitution U. S., Amendment 14, to assess franchise of railroad in state upon mileage basis, treating its lines in and out of the state as single system, notwithstanding line within state is not connected with lines out of state except by a terminal railroad company jointly owned by several railroads, under Ky. Stats., section 4081.

2. Taxation—Physical Connection Held Not to Exist Between Lines so as to Warrant Assessment of Franchise in State Upon Mileage Basis, Treating Lines as Single System.—A railroad, majority of whose stock was owned by another railroad, could not be considered a part of latter so that its franchise could be assessed upon mileage basis, treating both lines as a single system, where traffic affairs of two railroads were separate and distinct, and policy of each line was determined alone by its best interest, under Ky. Stats., section 4081.

3. Commerce—State Cannot Tax Privilege of Carrying on Commerce Among States.—A state cannot tax privilege of carrying on commerce among states.

4. Taxation—State Cannot Tax Property Outside of Jurisdiction Belonging to Persons Domiciled Elsewhere.—A state cannot tax property outside of its jurisdiction belonging to persons domiciled elsewhere.

5. Commerce—State Can Tax Property Within its Jurisdiction, Although Belonging to Persons Domiciled Elsewhere and Used in Commerce.—A state can tax property permanently within its jurisdiction, though belonging to persons domiciled elsewhere and used in commerce among states.

6. Taxation—When Property in State is Part of System Fact Considered, Though Other Parts Outside State.—When property is part of a system, and has its actual uses only in connection with other parts of system, that fact may be considered by state in taxing, even though other parts of system are outside state.

7. Taxation—Terminal Facilities and Property of Unusual Value Not Considered Part of Apportionable Entity in Taxing Railroad Franchise.—Terminal facilities and other property of a railroad of unusual value, whose situs is capable of being localized, are not to be considered as part of apportionable entity for purposes of taxation.

8. Taxation—Where System Basis is Arbitrarily Excessive, it Cannot be Adopted in Taxing Railroad.—Where system basis is shown to be arbitrarily excessive, it cannot be adopted in taxation of railroad franchise by state, under Ky. Stats., section 4081.

HUMPHREY, CRAWFORD & MIDDLETON and WALLACE & HARRIS for appellant.

W. D. JESSE, L. W. MORRIS, HAZELRIGG & HAZELRIGG and HOBSON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing in the first and affirming in the second of these cases.

Upon former appeals of these cases, we held that "in each of the years involved (1914-1918, inclusive), defendant Southern Railway Company (a Virginia corporation), was the owner of and actually operated the lines of the 'Southern Railway Company in Kentucky,'" and as a consequence, the lower court "should have assessed against defendant Kentucky's portion of its intangible property" on the mileage basis, as provided by section 4081, Kentucky Statutes.

As there had been no attempt to make the assessments, the cases were remanded to the circuit court, with directions "that it proceed to ascertain the amount of intangible property which should be assessed for each of the years involved in Kentucky according to the prevailing rule of law upon the subject." Commonwealth v. Southern Railway Co., 193 Ky. 474, 237 S. W. 11.

Upon the return of the cases, the defendant filed amended answers, and upon stipulated facts the court found that for 1915 Kentucky's portion of defendant's franchise had been fully assessed by and in the name of the Southern Railway Company in Kentucky, and that the value of its franchise employed in Kentucky not so assessed for each of the other years involved was as follows: 1914, $972,662.00; 1916, $2,018,-561.00; 1917, $1,730,090.00; 1918, $3,028,592.00.

Judgments were entered accordingly, and the defendant has prosecuted an appeal in both cases, the first of which relates to the years 1914 and 1916, and the second to the years 1917-18, but it is admitted that the assessments for 1917 and 1918 were made in accordance with and are concluded by the former opinion herein, and the judgment in that case will therefore be affirmed without further discussion.

The grounds upon which we are urged to reverse the judgment in the other case relating to the years 1914 and 1916 are, that for those years there was no such unity of use and operation between defendant's line in Kentucky and its lines outside of the state as to permit the assessment of its franchise, as was done, upon the theory that all of its owned and controlled lines, in and out of the state, constituted a single system; that as a matter of fact its line in Kentucky for such years had neither physical nor operative connection with lines outside of the state, unless it be with its line running from New Albany, Ind., to East St. Louis, Ill., and that to apply the notion of organic unity to all of its lines under such circumstances is violative of the Fourteenth Amendment of the Constitution of the United States, in that it brings into Kentucky for taxation purposes values wholly outside the state. Whether or not this is true is the sole question presented for decision upon these appeals.

The first contention, upon which there is but little if any emphasis, is that defendant's line in Kentucky is not connected with its line from Louisville through Indiana and Illinois to St. Louis, because of the fact the latter enters Louisville from New Albany, Indiana, over tracks of the Kentucky & Indiana Terminal Railroad Company. It is stipulated, however, that the latter company is equally and jointly owned by the defendant and two other railroad companies using its tracks and other

terminal facilities at Louisville, and that the defendant operates through trains under a single management from St. Louis, Missouri, through Louisville to Danville, Kentucky, and we are sure that there is not only such unity of use and control but also a sufficient physical unity, if that were required, to warrant defendant's line from St. Louis to Danville, Ky., being regarded as a single unit, and that it would not be violative of the Fourteenth Amendment of the federal Constitution to assess its franchise in Kentucky upon the mileage basis, treating these lines in and out of Kentucky as a single system. L. & N. R. Co. v. Commonwealth, 181 Ky. 193, 204 S. W. 94; L. & N. R. Co. v. Greene, 244 U. S. 522; Pittsburgh v. Backus, 154 U. S. 431; Fargo v. Hart, 193 U. S. 499.

But according to our understanding of the record if this should be done and other lines owned by defendant excluded, the defendant has already, through the assessment made by and in the name of the Southern Railroad Company in Kentucky, been assessed the full value of its franchise employed in the state for each of these two years, and the assessments fixed by the lower court can be sustained only if the 566 miles embraced in the St. Louis-Danville line are considered as a part of a system embracing also about 8,000 miles of lines owned, operated, leased, and controlled by the defendant, and extending from Washington, D. C., south through Virginia, the Carolinas, Tennessee, Georgia, Florida, Alabama, and Mississippi.

The question for decision then finally narrows to whether for the purpose of valuing defendant's franchise employed in Kentucky, the line from Danville, Kentucky, to St. Louis, Missouri, is to be considered as a separate unit or as a part of a system including also defendant's eastern and southern lines. For convenience we shall refer to the former as the Northern branch and the latter as the Southern branch of defendant's lines.

It is admitted that these two branches, for the years 1914 and 1916, had no physical connection with each other, unless it be through the Mobile & Ohio Railroad Company, of which the defendant owns a majority of the capital stock, and which connects with defendant's northern branch at East St. Louis, Ill., and with its southern branch at Mobile, Ala. With reference to this

company, there are the following stipulations in the re-
cord:

> "It is agreed that the traffic manager of the M.
> & O.—will state that the traffic affairs of the said M.
> & O.—were as separate and distinct from those of
> this defendant and administered as independently
> thereof as those of the I. C. Railroad Company or
> the L. & N. Railroad Company or any other line, and
> its policy was determined alone by what was to the
> best interest of the said M. & O. Railway Com-
> pany."

> "The M. & O. gives to the competitors of the
> Southern Railway more business than it gives to
> the Southern Railway Company."

So that while it is true defendant owned the majority
of the stock of the M. & O., it stands admitted that such
stock control was not employed by the defendant to unite
the M. & O. with other lines owned by it, and that for
each of such years it was operated separately and inde-
pendently from defendant's other two branches.

Defendant, in 1917, acquired the C., N. O. & T. P.
Railway Co., and thus connected its northern branch at
Danville, Lexington, and Georgetown, Ky., with its
southern branch at Harriman and Chattanooga, Tenn.,
but for the years 1914 and 1916:

> "It is agreed that the traffic manager of the C.
> N. O. & T. P. Ry. Co.—will state that the traffic af-
> fairs of the said C. N. O. & T. P. Ry. Co.—were as
> separate and distinct from those of this defendant
> and administered as independently thereof as those
> of the I. C. Railroad or the L. & N. R. R. Company
> or any other lines, and its policy was determined
> alone by what was to the best interest of the C. N.
> O. & T. P. R. R. Company."

As a result of these stipulations, it necessarily fol-
lows, it seems to us, that there was in fact no physical
connection between the northern branch and the southern
branch of the defendant's lines, and that despite the de-
fendant's ownership and control of both of these separ-
ated branches, they cannot, under the many decisions of
the Supreme Court of the United States, be considered
as parts of a single system for the purpose of ascertain-
ing the value of defendant's franchise employed in Ken-

tucky without violating the Fourteenth Amendment of the federal Constitution.

As was stated in Wells Fargo v. Hart, *supra*:

"The general principles to be applied are settled. A state cannot tax the privilege of carrying on commerce among the states. Neither can it tax property outside of its jurisdiction belonging to persons domiciled elsewhere. On the other hand, it can tax property permanently within its jurisdiction, although belonging to persons domiciled elsewhere, and used in commerce among the states. And when that property is part of a system and has its actual uses only in connection with other parts of the system, that fact may be considered by the state in taxing, even though the other parts of the system are outside of the state."

But as a state can under no formula tax things wholly beyond its jurisdiction, it has always been recognized that the mileage system of apportionment for taxation can never be used where special circumstances exist to distinguish between the conditions in and out of the taxing state, and so it has been held that terminal facilities and other property of unusual value, whose situs is capable of being localized, are not to be considered as parts of the apportionable entity. P. C. C. & St. L. v. Backus, 154 U. S. 421; I. C. R. R. Co. v. Greene, 244 U. S. 555; Wallace v. Hines, 253 U. S. 66.

It also has been held that where the system basis is shown to be arbitrarily excessive, it cannot be adopted. Union Tank Line v. Wright, 249 U. S. 277.

It is true, as urged by counsel for appellant, that in all of the cases where this notion of organic unity has been applied to a railroad in assessing the value of its franchise in one of the several states to which its lines extend, the entire mileage has constituted a single continuous road, and in some of the cases that fact has been referred to, but we do not construe any of the cases to mean that it is nesessary that there shall be physical continuity to warrant the application of the principle. Indeed in the case of Adams Express Co. v. Ohio, 165 U. S. 194, upon which appellee relies, the principle was ap-

plied where there was an absence of physical unity. It was there held:

"The unit is a unit of use and management,"

and after pointing out that the Express Company's tangible and separated property in Ohio "possessed a value in combination and from use in connection with" its property and capital located elsewhere, the court said:

"We repeat that while the unity which exists may not be a physical unity, it is something more than a mere unity of ownership. It is a unity of use, not simply for the convenience or pecuniary profit of the owner but existing in the very necessities of the case—resulting from the very nature of the business."

So while that case disposes of the necessity of physical unity, it does not fit our case because although there was a unity of ownership and management of the two branches of defendant's lines, there was not such a unity of use as is above indicated there must be; and it is not perceivable how the property in Kentucky, or defendant's northern branch of which it is a part, "possessed a value in combination and from use in connection with" the defendant's wholly disconnected southern branch, until in 1917 when defendant acquired the C., N. O. & T. P. Ry. Co., and thus unified all of its holdings into a single unit of use and management.

The court, in Wallace v. Hines, *supra*, probably more clearly than elsewhere, has defined the limits of the permissible use of the organic unity system of assessment, as well as the reason therefor, as follows:

"The only reason for allowing a state to look beyond its borders when it taxes the property of foreign corporations is that it may get the true value of the things within it, when they are part of an organic system of wide extent, that gives them a value above what they otherwise would possess. The purpose is not to expose the heel of the system to a mortal dart—not, in other words, to open to taxation what is not within the state. Therefore no property of such an interstate road situated elsewhere can be taken into account unless it can be seen in some plain and fairly intelligible way that it adds to the value of the road and the rights exercised in the state."

It therefore follows that, although our statute (4081) is broad enough to permit an assessment of defendant's franchise in Kentucky upon a mileage system of unity including all of its lines "owned, leased, or controlled in this state and elsewhere," it may not be so broadly applied, or except where "it can be seen in some plain and fairly intelligible way" that its property elsewhere "adds to the value of the road and the rights exercised in the state," which is not true here.

Wherefore, the judgment in the first case, in so far as it relates to the years 1914 and 1916, is reversed, and the judgment in the other case, relating to 1917 and 1918, is affirmed.