SOUTHERN RAILWAY- COMPANY *v.* KENTUCKY:

DAVIS, DIRECTOR GENERAL, *v.* KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF
KENTUCKY

Nos. 33, 34. Argued March 15, 16, 1926.—Decided April 11, 1927.

1. A State may tax property permanently within its jurisdiction belonging to one domiciled elsewhere and used to carry on commerce among the States. Where railroad property is a part of a system and has its actual use only in connection with other parts of the system, that fact may be considered even though other parts of the system are outside the State. The mileage basis of apportionment can not be adopted in the taxation of railroad franchises where the result is shown to be arbitrarily excessive. P. 80.

2. The value of the physical elements of a railroad—whether that value be deemed actual cost, cost of reproduction new, cost of reproduction less depreciation or some other figure—is not the sole measure of or guide to its value in operation; much weight is to be given to present and prospective earning capacity at rates that are reasonable, having regard to traffic available and competitive and other conditions prevailing in the territory served. P. 81.

3. No intangible element of substantial amount over and above the value of its physical parts inheres in a railroad that can not earn a reasonable rate of return on the amount attributable in valuation to its bare-bones—as the mere tangible elements properly may be called. P. 82.

4. While the mileage used as an integral part of a railroad system may have elements of value that it otherwise would not possess and the State properly may have regard to the whole in order to ascertain the value of the part that is within its borders, it is not permissible to take into account any of the outside property unless it can be seen in some plain and fairly intelligible way that it adds to the value of the road and the rights exercised in the State. P. 82.

5. Facts examined and *held* that the additional values of intangible property on which taxes in question were based are arbitrarily excessive and include values of system property beyond the State. P. 85.
6. Record examined and cause *held* reviewable on writ of error. P. 86.

204 Ky. 388, reversed.

THESE were proceedings by the Commonwealth instituted in a county court, for the purpose of listing for taxation intangible property of the railway alleged to have been omitted. The first was against the railway alone, covering the years 1914–1916. The second sought like relief for the years 1917–1918, during which the Director General of Railroads operated the railway system. The proceedings, tried together throughout, were dismissed by the county court, and by the circuit court, on appeal. The judgment of the latter was reversed in 193 Ky. 474. Judgments recovered on resubmission to the circuit court were affirmed by the Court of Appeals, except that, in respect of the years 1914 and 1916, the judgment in the first case was reversed. 204 Ky. 388.

*Mr. Edward P. Humphrey*, with whom *Messrs. L. E. Jefferies, Alex P. Humphrey*, and *Charles W. Milner* were on the brief, for plaintiffs in error.

*Mr. J. P. Hobson*, with whom *Messrs. L. W. Morris, D. L. Hazelrigg*, and *Frank Daugherty*, Attorney General of Kentucky, were on the brief, for defendant in error.

MR. JUSTICE BUTLER delivered the opinion of the Court.

A judgment against plaintiffs in error for franchise taxes imposed under the laws of Kentucky in respect of

certain lines of railway was affirmed by the highest court of that State. 204 Ky. 388. And see 193 Ky. 474. Reversal is sought on the ground that as applied these laws contravene the due process clause of the Fourteenth Amendment.

The statutes* (§§4077–4081) provide that every foreign or domestic railway company, in addition to other taxes imposed by law, shall pay an annual tax on its franchise. The provisions apply whether the privilege is exercised by the corporation in its own name or in the name of another which it adopts. A company's railway system is deemed to include lines operated, leased or controlled whether technically owned or not. The tax is on intangible property. Where the railroad is partly within and partly without the State, the value of the intangible property so to be taxed may be determined substantially as follows: capitalize the net railway operating income of the entire system for the accounting year last ended; assign to Kentucky its mileage proportion of that amount; deduct the assessed value of the tangible property otherwise taxed; and the remainder is the value taken as the basis for the franchise taxes. When the railroad is wholly within the State, the capitalized net, less the assessed value of tangible property on which other taxes are paid, is taken to be the value of intangible property. *Greene* v. *Louis. & Interurban R. R. Co.*, 244 U. S. 499, 510, and cases cited; *Louis. & Nash. R. R. Co.* v. *Greene*, 244 U. S. 522, 539.

Plaintiff in error, the Southern Railway Company, is a Virginia corporation. The lines of its system of railroads, exclusive of the Kentucky mileage in question, exceed 9500 miles and extend from Washington, D. C., into Virginia, the Carolinas, Tennessee, Georgia, Florida, Alabama and Mississippi. The company also has a line from New Albany, Indiana, to East Saint Louis, Illinois. It does

* The provisions are printed in the margin of *Louis. & Nash. R. R. Co.* v. *Greene*, 244 U. S. 522, at page 533.

not own any railroad in Kentucky. The " Southern Railway Company in Kentucky " owns 127.63 miles, all of which are in that State. Its branches connect with the line of the Cincinnati, New Orleans and Texas Pacific Railway Company which extends from Cincinnati to Chattanooga and connects it with the system. Its stock is owned by the Virginia company. The same persons are officers of both. The lines of the Kentucky company are reported to public authorities and are advertised as a part of the system. The Mobile and Ohio Railroad Company, the Cumberland Railroad Company, and the Cumberland Railway Company own, in all, about 53.3 miles of railroad in Kentucky, but their lines are not connected with the lines of the Southern Railway Company in Kentucky. The Virginia company through stock ownership controls these companies; but they and the Southern Railway in Kentucky, in their own names and as owners, made reports and paid in full all taxes assessed under Kentucky laws on their tangible and intangible properties.

The Commonwealth brought this suit against the Virginia company and the Director General to recover additional franchise or intangible property taxes for 1918 and 1919 in respect of the Kentucky mileage of these companies. The Court of Appeals held that there was no such connection or unity of use between the system of the Virginia company and the lines of the Mobile and Ohio, the Cumberland Railroad, and the Cumberland Railway as would justify recovery of any franchise taxes in respect of their Kentucky mileage. Stipulated facts tended to show that the Virginia company controlled the Cincinnati, New Orleans and Texas Pacific; and the court held that by means of its lines the railroad of the Southern Railway in Kentucky was so connected with the lines of the Virginia company as to be a part of the system. The value of intangible property adjudged to have been omitted, and on which the additional franchise taxes were

calculated, for 1918 was $1,730,090.02 and for 1919 was $3,028,592.62. These amounts were arrived at as follows: the net railway operating income for the entire system was capitalized at seven per cent.; there was deducted an amount to cover the value of shops, terminals and double tracks outside Kentucky in excess of corresponding tangible property connected with the lines in that State; there was allocated to Kentucky such proportion of the remainder as 424.61 miles, which were attributed to Kentucky, bore to the total mileage of the system; that amount was equalized for taxation at 75 per cent. for 1918 and at 85 per cent. for 1919; and from the result there was deducted the values of tangible and intangible property (including the Kentucky mileage of the Cincinnati, New Orleans and Texas Pacific) on which taxes had been paid. But the average value per mile so deducted was less than the system average per mile. The amounts so arrived at were assigned to the 127.63 miles of the Southern Railway Company in Kentucky and the 197.5 miles in Kentucky of the lines of the Cincinnati, New Orleans and Texas Pacific. The increase per mile for 1918 was $5,334.55 and for 1919 was $9,338.34.

The Court of Appeals rightly declared that a State may tax property permanently within its jurisdiction belonging to one domiciled elsewhere and used to carry on commerce among the States; that, where property is a part of a system and has its actual use only in connection with other parts of the system, that fact may be considered even though other parts of the system are outside the State; that the State may not tax property outside its jurisdiction belonging to one domiciled elsewhere, and that the mileage basis of apportionment cannot be adopted in the taxation of railroad franchises where the result is shown to be arbitrarily excessive. These propositions are derived from the decisions of this Court.

*Fargo* v. *Hart,* 193 U. S. 490, 499; *Pittsburgh, &c. Railway Co.* v. *Backus,* 154 U. S. 421, 427–431; *Union Tank Line Co.* v. *Wright,* 249 U. S. 275, 282; *Wallace* v. *Hines,* 253 U. S. 66, 69.

The question is whether the State made valid application of the governing principles. The value of tangible property is not involved in this case. The demand of the Commonwealth against the plaintiffs in error was for taxes on intangible properties over and above the amounts that had been paid by the owning companies. And the entire amount added as a basis for additional taxes is attributable only to the lines of the Southern Railway Company in Kentucky. There was no claim for any taxes in respect of the lines of the Cincinnati, New Orleans and Texas Pacific. That company had also reported its earnings and paid taxes on its tangible and intangible properties in Kentucky. These taxes were based on values per mile in excess of the average values per mile for the system arrived at by capitalization of net railway operating income in accordance with the rule applied by the State. No part of the amounts adjudged to have been omitted could properly be assigned thereto. The Mobile and Ohio, the Cumberland Railroad, and the Cumberland Railway were held not to be a part of the system. Plaintiffs in error insist that the enforcement of the taxes on these amounts, as measuring the additional values of intangible properties inhering in the lines of the Southern Railway Company in Kentucky, operates to tax the property of the Virginia company located beyond the borders of Kentucky and that such amounts are arbitrarily excessive.

The value of the physical elements of a railroad—whether that value be deemed actual cost, cost of reproduction new, cost of reproduction less depreciation or some other figure—is not the sole measure of or guide to

its value in operation. *Smyth* v. *Ames,* 169 U. S. 466, 547. Much weight is to be given to present and prospective earning capacity at rates that are reasonable, having regard to traffic available and competitive and other conditions prevailing in the territory served. No intangible element of substantial amount over and above the value of its physical parts inheres in a railroad that cannot earn a reasonable rate of return on its bare-bones—as the mere tangible elements properly may be called. See *Omaha* v. *Omaha Water Co.,* 218 U. S. 180, 202.

The amount adjudged to have been omitted equals an increase on the lines of the Southern Railway Company in Kentucky of $13,555 per mile for 1918 and of $23,730 for 1919. The 1917 average net operating income per mile for the system was the basis for determining the Kentucky franchise taxes for 1918, and the average for 1918 controlled the amount of the 1919 taxes. The average for the system was $3,642 per mile for 1917 and was $3,623 for 1918. The corresponding net income per mile of the Southern Railway Company in Kentucky for 1917 was $878. There was a loss of $4,741 per mile in 1918. The record also shows a loss in each of the years 1914, 1915 and 1916. The average for the five years was a loss of $1,230 per mile per year.

If considered alone, the railroad of the Southern Railway Company in Kentucky would be a losing venture. Its operating loss was more than $157,000 per year for the average of the five years reported in the record. But, assuming it a part of the system, it is right to take into consideration the parts outside the State that are operated in connection with it. The mileage used as an integral part of a railroad system may have elements of value that it otherwise would not possess, and the State properly may have regard to the whole in order to ascertain the value of the part that is within its borders. *Fargo* v. *Hart, supra,* 499. But, if the method pursued in valuing prop-

erty within the State is arbitrary and the resulting valuation is grossly excessive, the tax must be condemned as in contravention of the due process clause of the Fourteenth Amendment. *Union Tank Line Co.* v. *Wright, supra,* 282, and cases cited. It is not permissible for the State to take into account any of the outside property " unless it can be seen in some plain and fairly intelligible way that it adds to the value of the road and the rights exercised in the State." *Wallace* v. *Hines, supra,* 69.

The operating results of the system compared with those of the Southern Railway Company in Kentucky show that, on the basis of valuation adopted by the State, the average value per mile of the lines of that company is very much less than the average value per mile of the system. If taken separately it is clear that, because of lack of net earnings, no substantial intangible elements of value could reasonably be attributed to the railroad of that company. In order to justify the increases made, there would have to be attributed to these lines large amounts from system earnings. To sustain the addition for 1919, it is necessary to take enough to overcome the deficit of $4,741 per mile plus a fair return on the value of the physical property and on the $23,730 per mile fixed as a basis for additional taxes. The draft on earnings from other parts of the system to sustain the increase for 1918 would not be so heavy. But it is equally obvious that there is no foundation for the finding that there existed in these lines intangible values of $1,730,090 or any other substantial amount in excess of the value fairly to be attributed to the physical elements of the railroad. If intangible elements were attributed to the system at the same rate per mile as results from the distribution of the added amount to the mileage of the Southern Railway in Kentucky, their value would be more than $200,000,000 for 1919 and more than $120,000,000 for 1918. Clearly there is no foundation for any such results. The mere

statement of the figures is sufficient to show that the amount added as a basis for franchise taxes is so excessive and unreasonable that it cannot be sustained; and such an application of the system earnings amounts to an attempt to tax property outside the State. And as the direct earnings per mile of the lines of that company are so much less than the average for the system, it is plain that the amount adjudged to have been omitted was arbitrarily excessive and included values of system property beyond the limits of Kentucky.

Moreover, the percentages used to make the apportionment to Kentucky were too high. Reference to the figures for 1919 will be sufficient. There was taken 4.273 per cent. of $432,326,444.12, the system value to be apportioned. The system mileage was 9939.1, and that used for the apportionment was 424.61. The Southern Railway Company in Kentucky had 127.63 miles, the Cincinnati, New Orleans and Texas Pacific, 197.5, the Mobile and Ohio, 38.693, the Cumberland Railroad, 12.9, and the Cumberland Railway, 1.74. As the court held that the lines of the three companies last mentioned were not so connected with the system that plaintiffs in error were liable in respect of them, their mileage was erroneously included in the factor used for apportionment to the lines taxed. And for the reasons stated the mileage of the Cincinnati, New Orleans and Texas Pacific should not have been included. The mileage used to make the apportionment was more than three times that of the Southern Railway in Kentucky, and was more than thirty per cent. in excess of the combined mileage of that company and the Cincinnati, New Orleans and Texas Pacific. Obviously deduction of the lesser values of the Kentucky mileage on which the owners had paid taxes did not eliminate the error.

The enforcement of the franchise taxes so assessed would violate the due process clause of the Fourteenth Amendment.

The Commonwealth asserts that in the Kentucky courts the company did not make "the objection which is made here that this was a tax on property outside the State." But the record shows the contrary. The petition alleged that a portion of the Kentucky franchise had been omitted from assessment and prayed that such portion be assessed and taxed. The answer of plaintiffs in error not only denied liability and alleged that to hold the company liable and to attempt to add to that assessment would be a violation of the Fourteenth Amendment, but it also stated: "Defendants say that the effort made herein is simply for the purpose of endeavoring to bring into the State of Kentucky for purposes of taxation, property not in Kentucky, and values appertaining to property not in Kentucky, and earnings derived from property not in Kentucky; that to do this would be in violation of . . . the Constitution of the United States, particularly the Fourteenth Amendment thereof." In its first decision (193 Ky. 474), the Court of Appeals said (p. 488): "It is our conclusion, therefore, that the court should have assessed against defendant [Southern Railway Company of Virginia] Kentucky's portion of the intangible property assessed by the proportion of the mileage that the lines nominally operated by the 'Southern Railway Company in Kentucky' bear to the entire mileage of defendant's system estimated according to the method provided by the statute. But it is insisted that this would result in taxing in Kentucky property having no situs here. . . ." Then follows the court's answer to that contention. This shows that the court distinctly recognized and passed upon the contention that the imposition of the additional franchise taxes would be to tax property outside Kentucky. That decision, according to the local rule, not only bound the lower court, but controlled the disposition of the case on the second appeal. *Hopkins* v. *Adam Roth Grocery Co.,* 105 Ky. 357, 358. The objec-

tions were reiterated in an amended answer filed after the first decision. And the Court of Appeals in its second decision declared that the additional assessments "were made in accordance with and are concluded by the former opinion herein." Clearly, the objections made in the state courts were sufficient. They went to the point that, as proposed to be applied and enforced, the state statutes would operate to tax property outside and beyond the jurisdiction of Kentucky in contravention of the Fourteenth Amendment. And, notwithstanding these objections, the Court of Appeals in its first decision directed the making of these additional assessments; and, in its second decision, declared that they had been made as directed and affirmed the judgment of the Circuit Court by which they were determined.

A petition for certiorari was filed, but, as the case is properly here on writ of error, the petition will be denied.

*Judgment reversed on writ of error.*
*Petition for certiorari denied.*

---

MR. JUSTICE BRANDEIS, dissenting.

I do not consider the merits of this case, because, in my opinion, it should be affirmed on a point of practice which was urged here by the Commonwealth. On writ of error to a state court, even where, as here, this Court has jurisdiction, no objection is reviewable which was not made there. The question on which the judgment of the Court of Appeals of Kentucky is reversed was not raised or passed upon below.

The claim made below was that the Southern could not be taxed at all in Kentucky under the unit rule and that, therefore, the statute as applied was void. *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282, 288–290. The Commonwealth admitted that the Southern, a Virginia corporation, did not own the Kentucky lines di-

rectly.  The Southern admitted that it controlled them by stock ownership.  In support of the claim that the unit rule could not be applied, the Southern made two contentions.  The first was dealt with by the Court of Appeals in its first opinion, 193 Ky. 474; the second, in its second opinion, 204 Ky. 388.  The first contention was that the unit rule could have no application, because the Southern was not doing business in Kentucky.  That contention the Court of Appeals decided against the Southern for all the years; and this Court affirms the ruling.  The second contention was that the unit rule did not apply, because there was not unity of use and operation of the Kentucky lines with its lines elsewhere.  The question depended upon the amount of control exercised by the Southern Railway Company over the C., N. O. & T. P. Railway, which connected the Southern Railway in Kentucky with the rest of the Southern system.  This contention the Court of Appeals decided in favor of the Southern for the years 1914, 1915 and 1916; but against it for the years 1917 and 1918.  With this ruling also this Court agrees. The reversal by this Court is based on an entirely different claim.  It is on the ground that the method of assessment used was such as to furnish, as a basis for the franchise tax, an amount so unreasonable and arbitrary as to involve taxation of property outside the State, in view (1) of the fact that the per mile earnings of the entire system were so much larger than the per mile earnings of the Southern in Kentucky, and (2) of the supposed use of too large a percentage intended to represent the proportion of the mileage in Kentucky to the total mileage of the system.

The Court of Appeals recognized clearly that it could not tax in Kentucky any property outside its limits.  It upheld the tax as an increase of assessment upon property located confessedly in Kentucky, applying the rule of *Pullman Co.* v. *Richardson,* 261 U. S. 330, 338, that " if

the property be part of a system and have an augmented value by reason of a connected operation of the whole, it may be taxed according to its value as part of the system, although the other parts be outside the State;—in other words, the tax may be made to cover the enhanced value which comes to the property in the State through its organic relation to the system."

Applying the unit rule, however, there are two grounds on which a decision sustaining the claim that property outside the State has been taxed might have rested, if the appropriate claim had been made below. It might have been held that the statute, so far as it required the adoption of the mileage plan of valuation, was void as applied, because the different character of the lines out- side Kentucky precluded the application of the per mile method as a basis of valuation. Compare *Fargo* v. *Hart*, 193 U. S. 490; *Wallace* v. *Hines*, 253 U. S. 66, 69. Or it might have been held that the tax was void, because the additional assessment based on mileage without the State was so arbitrary and unreasonable in amount as to violate due process. Compare *Union Tank Line Co.* v. *Wright*, 249 U. S. 275; *Wallace* v. *Hines*, 253 U. S. 66, 69–70. But neither of these claims was made in the court below. The only contentions made there were those which this Court and the lower court agree in holding unfounded— namely, that the Southern was not doing business in Ken- tucky and that there was no such unity of use and opera- tion of the lines within and those without the State as to permit of the application of the unit rule.[1]

---

[1] The reason urged by the Southern in support of the second con- tention was, as the second opinion recites, that the Kentucky lines " had neither physical nor operative connection with lines outside of the state . . . and that to apply the notion of organic unity to all its lines under such circumstances is violative of the Fourteenth Amendment of the Constitution of the United States, in that it brings into Kentucky for taxation purposes values wholly outside of the

The second opinion of the Kentucky Court of Appeals recites that "it is admitted that the assessments for 1917 and 1918 were made in accordance with and are concluded by our former opinion." Hence it was necessary for the plaintiff in error to show that the objections insisted upon in this Court were raised upon the first trial or the appeal in the state court.[2]   A consideration

state.  Whether or not this is true is the sole question presented for decision upon these appeals." The Court of Appeals decided the second contention in favor of the Southern for the years 1914, 1915 and 1916, because it concluded "that there was in fact no physical connection between the Northern branch and the Southern branch of the defendant's lines, and that despite the defendant's ownership and control of both of these separate branches, they cannot, under the many decisions of the Supreme Court of the United States, be considered as parts of a single system for the purpose of ascertaining the value of defendant's franchise employed in Kentucky without violating the Fourteenth Amendment of the federal Constitution." It held the Southern taxable for the years 1917 and 1918 because in 1917 the "defendant acquired the C. N. O. & T. P. Ry. Co., and thus unified all of its holdings into a single unit of use and management." In considering the situation for the earlier years it stated: "The question for decision then finally narrows to whether for the purpose of valuing defendant's franchise employed in Kentucky, the line from Danville, Kentucky, to St. Louis, Mo., is to be considered as a separate unit or as a part of a system including also defendant's eastern and southern lines."

[2] As showing that they were raised, this Court relies upon the allegation of the answer that "the effort made herein is simply for the purpose of endeavoring to bring into the State of Kentucky for purposes of taxation, property not in Kentucky;  . . .  that to do this would be in violation of  . . .  the Fourteenth Amendment," and upon a quotation from the first opinion of the Kentucky Court of Appeals to the effect that "it is insisted that this would result in taxing in Kentucky property having no situs here. . . ." The reliance of this Court appears to rest upon a misapprehension. On the first trial, the lower courts dismissed the State's petition. As no method of assessment was before the Court of Appeals, it could not, in its first opinion, have passed upon the arbitrariness of this or any other method of assessment. See 193 Ky. 474, 489.

of the entire answer and of the entire first opinion make it altogether clear that the contention, which was advanced by the answer and refuted by the opinion, consisted solely of the claim that any assessment against the Southern would be unconstitutional as taxing property outside the State because the Southern was not doing business within the State. Neither the record nor the opinion of the Court of Appeals discloses that there was an objection to the assessment as such. Nowhere in the opinion is there any reference to the figures urged here as showing the arbitrariness of the statute as applied.

It cannot be said " that the necessary effect in law of a judgment, which is silent upon the question, is the denial of a claim or right which might have been involved therein, but which in fact was never in any way set up or spoken of." *Dewey* v. *Des Moines,* 173 U. S. 193, 200. The rule that a claim or right which was not asserted in the state court cannot be deemed to have been denied, and hence cannot be insisted upon in this Court has been long established.[3] It is true also that the party defeated upon a federal question in a state court will not be limited in this Court to the same argument upon that question, *Dewey* v. *Des Moines, supra,* at p. 198; and that, if the federal question is properly raised, it is immaterial that the state court may have refused to discuss the point. *Erie R. R. Co.* v. *Purdy,* 185 U. S. 148, 154. But

---

[3] In 1836 Mr. Justice Story, because of the fact " that a different impression exists at the bar," reviewed all the cases that had reached this Court from the state courts, finding that they exhibited " an uniformity of interpretation . . . which has never been broken in upon," requiring that, in order to give the Court jurisdiction, the question sought to be reviewed had both to be raised in the court below and there decided. *Crowell* v. *Randell,* 10 Pet. 368, 392, 398. By 1894 Chief Justice Fuller regarded such principles as " axiomatic." *California Powder Works* v. *Davis,* 151 U. S. 389, 393. The rule is still inflexible. *New York* v. *Kleinert,* 268 U. S. 646.

if the contention made below differs from the contention made here to such a degree that the decision upon one would not necessarily conclude the other, the raising of one below will not permit the raising of the other here, even if the same provision of the Constitution be the basis of both claims. Compare *Dewey* v. *Des Moines,* *supra; Marvin* v. *Trout,* 199 U. S. 212, 223–224, 227.

The importance of the rule of practice is illustrated by the case at bar.[4] Because the reasonableness of the method of assessment was not questioned below, there is nothing in the record to show what figures and what method of calculation were used by the taxing officers. The figures adopted by this Court are presented only in the brief of the plaintiff in error. They are protested by counsel for the Commonwealth. Moreover, there is reason to believe that the inferences drawn from them are unsound.

1. A decision of the Supreme Court of the District of Columbia, in Probate, allowing a commission to executors in the approval of their yearly account, is reviewable by appeal without bill of exceptions, where an issue of law only was involved, raised by exceptions of the beneficiaries to the account. P. 95.

---

[4] Compare *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632, 636; *National Bank* v. *Commonwealth,* 9 Wall. 353, 363; *Edwards* v. *Elliott,* 21 Wall. 532, 557; *Wilson* v. *McNamee,* 102 U. S. 572; *Keokuk & Hamilton Bridge Co.* v. *Illinois,* 175 U. S. 626, 633; *Bolln* v. *Nebraska,* 176 U. S. 83, 90; *Chapin* v. *Fye,* 179 U. S. 127; *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238, 248; *Cox* v. *Texas,* 202 U. S. 446, 452; *Montana* v. *Rice,* 204 U. S. 291, 301; *Hunter* v. *Pittsburgh,* 207 U. S. 161, 180; *Selover, Bates & Co.* v. *Walsh,* 226 U. S. 112; *Illinois Cen-*

*tral R. R. Co.* v. *Mulberry Coal Co.,* 238 U. S 275, 281; *Bullen* v. *Wisconsin,* 240 U. S. 625, 632; *Hiawassee River P. Co.* v. *Power Co.,* 252 U. S. 341.   Compare *Virginian Ry. Co.* v. *Mullens,* 271 U. S. 220.