## NORFOLK & W. RY. CO. v. BOARD OF PUBLIC WORKS OF WEST VIRGINIA.

District Court, S. D. West Virginia, at Charleston.

June 16, 1933.

Robert E. McCabe, of Charleston, W. Va., and Joseph M. Crockett, of Welch, W. Va. (Theodore W. Reath, of Philadelphia, Pa., on the brief), for plaintiff.

Homer A. Holt, Atty. Gen., and Philip Simms and John T. Simms, both of Charleston, W. Va. (Simms & Simms, of Charleston, W. Va., on the brief), for defendants.

Before PARKER and NORTHCOTT, Circuit Judges, and McCLINTIC, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit in equity brought in the District Court of the United States for the Southern District of West Virginia, at Charleston, seeking to enjoin the defendants and each of them from collecting or attempting to collect from plaintiff certain unpaid balances of taxes assessed against the plaintiff for the year 1932 and seeking to set aside an order of the circuit court of McDowell county of West Virginia, imposing upon the plaintiff certain taxes levied for the year 1932. The allegation upon which the relief is sought is that that part of the railroad operated by the plaintiff in the state of West Virginia was assessed at more than its true and actual value for the year 1932 and that the plaintiff was discriminated against in the assessment of railroad properties for that year.

Upon bringing of the suit the District Judge convened a three-judge court under section 266 of the Judicial Code, as amended (28 USCA § 380). It was agreed between the parties that no action would be taken by the auditor of the state pending a decision of this court and no temporary injunction was granted.

The plaintiff is a corporation organized and existing under the laws of Virginia and a citizen of that state, having its principal office at Roanoke, Va.; and is engaged in the operation of a steam and electric railroad, which it owns, running through several states, among them the state of West Virginia. Under the statutes of West Virginia, interstate railroads running through that state are assessed by the board of public works, consisting of the governor, secretary of state, treasurer, auditor, state superintendent of free schools, attorney general, and the commissioner of agriculture. All railroads are required to make a return, giving certain detailed information, in writing on the 1st day of April of each year to the tax commissioner of the state for the year ending on the 31st day of December next preceding. The tax commissioner is required to arrange, collate, and tabulate these returns for the use and information of the board of public works. The tax comissioner is required to sit with the board but does not have a vote in fixing the assessment. An appeal from any railroad assessment made by the board is allowed by providing for an appeal to the circuit court of the county in which the largest assessment of such railroad was made in the next preceding year. The circuit court is authorized to raise or lower the assessment

according to the conclusion the judge may reach from the evidence presented on the appeal, the case being conducted de novo. No provision is made for any appeal from the action of the circuit court in fixing the value for purposes of taxation. The assessment is required by law to be fixed at the true and actual value of the property as of the 1st day of January of each year and the statute (Code 1931, 11-3-1), further provides that by true and actual value is meant "the price for which such property would sell if voluntarily offered for sale by the owner thereof, upon such terms as such property, the value of which is sought to be ascertained, is usually sold, and not the price which might be realized if such property was sold at a forced sale." In the event of failure to pay the tax the state auditor is required to certify to the sheriff of each county the amount of taxes assessed within his county for collection. Provisions of the West Virginia Code covering these points will be found in chapter 11 of the Code of 1931.

Pursuant to the provisions of the law, the board of public works of West Virginia placed a valuation for purposes of taxation upon that portion of plaintiff's railroad lying in West Virginia, for the year 1932, of $65,000,000. From this action of the board the plaintiff took an appeal to the circuit court of McDowell county, that being the county where the largest assessment was made of its property in any of the counties of West Virginia for the year 1931. Evidence was introduced before the judge of the circuit court and that judge in an able and exhaustive opinion confirmed the action of the board of public works in fixing the value of the property at $65,000,000 and entered an order to that effect.

In the appeal taken by the plaintiff to the circuit court of McDowell county it was also alleged that the assessment was invalid as being violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and of section 1, article 10, of the Constitution of West Virginia, in that the property of the plaintiff was assessed at a higher relative value than the property of other railroads in the state of West Virginia, especially the Baltimore & Ohio and Chesapeake & Ohio railroads and at a relatively higher value than other property in the counties through which plaintiff's line ran. On this point the judge of the circuit court also held against plaintiff's contention, pointing out that there was no evidence offered as to the value of other railroads, the value for assessment of which was

compared with that of the plaintiff, and further holding that other property in the section through which the railroad ran was valued for taxation at an equal level with that of plaintiff's property.

■■■ At the beginning of the hearing before this court a motion was made to dismiss the suit as one not being properly cognizable under section 266 of the Judicial Code, as amended. This motion was argued and submitted at the same time with the other question involved.

We are of the opinion that the motion to dismiss should be denied and that the suit is one of which a three-judge court should have jurisdiction. In Henrietta Mills Co. v. Rutherford County, N. C. (D. C.) 26 F.(2d) 799, 800, Judge Parker of this court ably discusses this question and says that four things are necessary to bring a case within the statute, to wit: "(1) That an interlocutory injunction is sought; (2) that such injunction will result in suspending or restraining the enforcement, operation, or execution of a statute of a state, or the order of an administrative board or commission acting under or pursuant to statute; (3) that the ground upon which the interlocutory injunction is asked is the unconstitutionality of the statute or order; and (4) that it is sought to restrain by the interlocutory injunction the action of an officer of the state."

An examination of the record in this case shows that all four of these requisites are present. It is strongly contended on behalf of the defendants that the sheriffs of the respective counties are, in effect, the only officers sought to be enjoined, as they are the only officers who could actually enforce collection of the taxes involved, and that they are not state officers but are county officers under the Constitution and statute of West Virginia (section 1, article 10, Constitution of West Virginia; Code of West Virginia, chapter 7, article 5, § 1). This contention cannot be maintained because it must be remembered that under chapter 11, article 6, § 18 of the Code of West Virginia the sheriffs act only upon the certificate of the state auditor and cannot levy for collection of taxes until that certificate is received by them. One of the purposes of this suit is to enjoin the auditor from making such a certificate.

In Stratton v. St. Louis Southwestern Railway Co., 282 U. S. 10, 51 S. Ct. 8, 10, 75 L. Ed. 135, the court says: "If an application for an interlocutory injunction is made and pressed to restrain the enforcement of a state statute, or of an administrative order made pursuant to a state statute, upon the ground that such enforcement would be in violation of the Federal Constitution, a single judge has no jurisdiction to entertain a motion to dismiss the bill on the merits. He is as much without power to dismiss the bill on the merits as he would be to grant either an interlocutory or a permanent injunction."

See, also, Chicago, B. & Q. R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878; Chicago Great Western R. Co. v. Kendall, 266 U. S. 94, 45 S. Ct. 55, 69 L. Ed. 183; Chicago, I. & L. R. Co. v. Lewis (D. C.) 12 F.(2d) 802; Cumberland Pipe Line Co. v. Lewis (D. C.) 17 F.(2d) 167; Western Union Telegraph Co. v. Tax Commission (D. C.) 21 F.(2d) 355.

On the hearing on the merits before this court, by stipulation, the evidence and the entire record before the circuit court of McDowell county was introduced and some additional evidence offered. This additional evidence dealt mainly with the going concern value of the plaintiff's railroad.

■ The action of the board of public works of West Virginia in fixing the value of plaintiff's railroad property within the state is presumed to be correct, and the burden rests upon the plaintiff to overthrow that presumption by evidence. The chief complaint made by the plaintiff is as to the method used by the board in arriving at the value, chiefly because, as was shown, the board had before it for consideration certain work sheets submitted to the board by the tax commissioner, showing that estimates were made based upon the earnings and dividend paying history of the road and the average value of the stock and bonds of the railroad over a period of five years. The evidence shows that in fixing the value for purposes of taxation the board considered, among other things, the returns of the railroad, the value of the stock and bonds of the road, its earnings and dividends for a period of five years, the investment account, the replacement value, and the valuation of the railroad as made by the Interstate Commerce Commission in the year 1916, together with the amount spent for betterments since that year, less depreciation. After considering all of these things as factors, the members of the board exercised their own judgment as to the value to be fixed and thus arrived at the amount of $65,000,000. The contention of the plaintiff is that the only proper yardstick with which the value of the road could be ascertained as of January 1, 1932, was the stock and bond method, taking the market value of the stocks

and bonds of the railroad as of December 31, 1931, and that the use of this method, deducting a proper amount for a going concern value, which it was claimed should not be included in the true and actual value, would leave the proper amount to be fixed for purposes of taxation to be in the neighborhood of $46,000,000.

■■ As to the contention of the plaintiff that the stock and bond value as of one day December 31, 1931, is the proper measure of value, it is only necessary to note, as shown in the record, the variation in the market value of the stock of the plaintiff company in one year varying, in the year 1932, from a low of $57 to a high of $135 for a share of the common stock and running within a five-year period from a low of $57 to a high of $290 for a share of said stock. Nothing more than this need be stated to show the fallibility of this yardstick as the sole measure of value. Market conditions, attempts to corner stock, periods of depression, and periods of great prosperity all enter into the price of stocks as quoted on the market. It certainly could not be contended that the true and actual value of the property of the plaintiff is subjected to any such wide range of high and low values. This is especially true when we consider the proven fact that the dividend on the common stock of the plaintiff has not varied in any such degree, running from a dividend of 10 per cent. in 1927 and 1928, to 12 per cent. in 1929, 1930, and 1931, and 9 per cent. in 1932. The 4 per cent. common stock of the plaintiff has not had any such wide range of value, yet even there the $65 per share value in 1932, as compared with $92.50 value in 1930, shows that this single factor, while it may be considered, is not reliable as a controlling method of fixing values for purposes of taxation. Those in control of the stock could easily manipulate it so as to show an entirely fictitious value on any given day and thus control the amount of taxes to be paid without regard to the true and actual value of the property. The plaintiff has certainly offered no better method of ascertaining the value sought than any one of the many methods shown to have been taken into consideration by the board.

That assessing boards are justified in considering more than one factor in reaching values is well settled by a long line of court decisions, with practically no dissent, and while some courts favor one method as being more fair than other methods and other courts favor still other methods, yet an examination of the opinions shows that the courts as a whole are very much inclined to the consideration of all factors. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Adams Express Company v. Ohio State Auditor, 166 U. S. 185, 17 S. Ct. 604, 41 L. Ed. 965; Pittsburgh, etc., Railroad Co. v. Backus, 154 U. S. 421, 14 S. Ct. 1114, 38 L. Ed. 1031; Columbus Southern Railway Co. v. Wright, 151 U. S. 470, 14 S. Ct. 396, 38 L. Ed. 238; Cleveland, etc., Railway Co. v. Backus, 154 U. S. 439, 14 S. Ct. 1122, 38 L. Ed. 1041; Brooklyn City R. R. Co. v. State Board of Tax Com'rs of New York, 199 U. S. 48, 25 S. Ct. 713, 50 L. Ed. 79; Louisville & Nash. R. R. Co. v. Greene, 244 U. S. 522, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; Illinois Central Railroad Co. v. Greene et al., 244 U. S. 555, 37 S. Ct. 697, 700, 61 L. Ed. 1309; Southern Railway Co. v. Kentucky, 274 U. S. 76, 47 S. Ct. 542, 544, 71 L. Ed. 934; Chicago & N. W. Ry. Co. v. Eveland (C. C. A.) 13 F.(2d) 442; Harris Trust & Savings Bank et al. v. Earl (C. C. A.) 26 F.(2d) 617; Wells Fargo & Co. v. Johnson, L. R. A. 1916C, 529, note; West Penn Power Co. et al. v. Board of Review and Equalization (W. Va.) 164 S. E. 862.

As was said in Cooley on Taxation (4th Ed.) 1682: "The cost is not necessarily the taxable value, nor is the cost of construction less discount for depreciation, nor is the cost of reproduction with an allowance for deterioration, but such items may be taken into consideration as well as the earnings or dividends of the company. So the market value of the shares of stock and bonds is not conclusive evidence of the value of the property of a corporation, although often a useful and important element in valuation. Net earnings may be considered in determining the value, but the value cannot be determined by that circumstance alone."

The capitalization of income plan of valuation, which, while it was considered first by the board of public works and later by the circuit court, was not used as the sole basis, would have given a much greater value than that fixed, has been approved by the Supreme Court when used. In Illinois Central R. R. v. Greene et al., supra, the court said: "The first three points relate to valuation, the last two to apportionment. The district court properly held that the action of the Board must be sustained unless it was made to appear that they had adopted a fundamentally wrong principle, or had been guilty of fraud. It held further, that no fundamentally wrong principle was involved in determining whether such a railroad system

should be valued on the capitalization-of-income or on the stock-and-bond plan; or, if the former, what rate of interest should be used in capitalizing, or how many years' earnings should be considered, or what was in fact the amount of net income for a given year; or, if the stock-and-bond plan was adopted, what was the value of the stock and bonds; and that on these and similar matters the action of the Board, in the absence of fraud, was binding upon the court. In this we concur."

In one of the latest cases in the Supreme Court, that of Southern Railway Company v. Kentucky, supra, the court said: "The value of the physical elements of a railroad—whether that value be deemed actual cost, cost of reproduction new, cost of reproduction, less depreciation or some other figure—is not the sole measure of or guide to its value in operation. * * * Much weight is to be given to present and prospective earning capacity at rates that are reasonable, having regard to traffic available and competitive and other conditions prevailing in the territory served."

As was said by the judge of the circuit court of McDowell county in his opinion, nowhere has there been found a decision holding that the value of the stocks and bonds of a company on a single day could be used as the sole basis of computing physical value.

The record shows that the plaintiff company occupied an unusual and very favorable position as a railroad. It has a virtual monopoly in serving one of the richest coal fields in the world; through an unusual period of business depression it maintained its earnings to such a level that it continued to pay unusual dividends on its common stock, while at the same time adding to its surplus; the market value of its common stock has held up better than that of most any other railroad in the United States; it runs through some very productive agricultural country and has terminals in prosperous cities; it has a proportionately small debt and, in many other respects, is more advantageously situated than any other railroad operating in the state of West Virginia. All these things were properly taken into consideration by the board of public works in fixing the value for taxation purposes.

The circuit court, after ascertaining the value of plaintiff's railroad system as a whole, by one method apportioned to the state of West Virginia 28.20 per cent. of the total. This percentage was reached by taking the percentage in West Virginia of main and branch track mileage, per cent. of all track mileage, per cent. of train mileage, per cent. of locomotive mileage, per cent. of car mileage, per cent. of ton mileage, per cent. of gross operating revenue in West Virginia (five years average), per cent. of net operating revenue (five years average), and taking an average of these percentages as the proper percentage to be allocated to the state of West Virginia. We do not see how a fairer method could have been used especially in view of the fact that that part of plaintiff's railroad running through West Virginia was, because of topographical conditions, much more costly of construction than the average of the remainder of plaintiff's railroad. In addition to this, 195 miles of the plaintiff's railroad in West Virginia is double track, and 59 miles of its track in West Virginia has been electrified, at a great expense per mile. Fifty-seven per cent. of all the plaintiff's freight business originates in the state of West Virginia, yet the circuit court, as well as the board of public works, found an average of this percentage and the percentage reached on a road mileage basis, and a physical value basis and reached a balanced percentage. We are of the opinion that the percentage allocated to West Virginia is, if anything, smaller than it should be. It is contended on behalf of the plaintiff that the percentage of the property allotted to West Virginia should have been less and should have been made solely upon the road mileage basis. We cannot agree with this contention.

The circuit court of McDowell county, following the average method (taking an average of thirteen different methods), found the value of that part of plaintiff's railroad system located in West Virginia. After this tentative value was reached, one-third was deducted to cover errors in calculation or errors in method used, and because it was contended that other property in the state other than railroad property was assessed at less than its true and actual value. The court then further reduced this value by making an allowance for the value of investments owned by plaintiff outside of the state not offset by special investments of like value in West Virginia, and for other reasons (an allowance that defendants strongly contend should not have been made), and reached the value of $71,162,656. The court did not raise the assessment but contented itself with confirming the action of the board of public works.

The record convinces us as it did the circuit court, that in reaching the final value the

board of public works was liberal in its treatment of the plaintiff. The Interstate Commerce Commission as of June 30, 1916, valued the property of plaintiff in West Virginia, on a reproduction basis, at $80,619,114, and since then there has been spent by plaintiff, in betterments on its West Virginia property alone, over $59,000,000. The Interstate Commerce Commission used a basis of 29.907 per cent. in ascertaining the portion of the whole system to be assigned to West Virginia. Every method of calculation that would meet with our approval shows a larger true and actual value of plaintiff's property in West Virginia than the one fixed by the board, and we are of the opinion that the allegation in plaintiff's bill on that point is not sustained by the evidence.

 ·On the question of discrimination against the plaintiff in the fixing of the value of other railroads in the state, we are of the opinion that plaintiff's contention is not sustained for two reasons: (1) There is no evidence in the record as to the value of the properties of the other railroads upon which the allegation could be sustained and, in fact, no evidence at all of the value of the other railroads; (2) there is no evidence that the discrimination, if it existed, was intentional, designed, or arbitrary.

"It is not enough, in these cases, that the taxing officials have merely made a mistake. It is not enough that the court, if its judgment were properly invoked, would reach a different conclusion as to the taxes imposed. There must be clear and affirmative showing that the difference is an intentional discrimination and one adopted as a practice." Chicago G. W. Railway Co. v. Kendall, 266 U. S. 94, 45 S. Ct. 55, 57, 69 L. Ed. 183.

See, also, Maish v. Arizona, 164 U. S. 599, 17 S. Ct. 193, 41 L. Ed. 567; First National Bank v. Albright, 208 U. S. 548, 28 S. Ct. 349, 52 L. Ed. 614; St. Louis Southwestern Railway Co. v. Arkansas, 235 U. S. 350, 35 S. Ct. 99, 59 L. Ed. 265; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154; Maxwell v. Bugbee, 250 U. S. 525, 40 S. Ct. 2, 63 L. Ed. 1124; Southern Railway Co. v. Watts, 260 U. S. 519, 43 S. Ct. 192, 67 L. Ed. 375; Sioux City Bridge Co. v. Dakota County, Neb., 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979.

In addition to this, the question of discrimination was raised in the suit before the circuit court of McDowell county, and the decision of that court on this question was a judicial action and not administrative, as was

the act of that court in fixing the value for purposes of taxation. No appeal was taken by plaintiff from the decision of the circuit court on the question of discrimination, and on that point this court would, in our opinion, have no jurisdiction.

For the reasons above stated the relief prayed for by the plaintiff must be denied.

### Findings of Fact.

The court finds as a fact that the property of the plaintiff located in the state of West Virginia was not valued, for purposes of taxation by the board of public works of West Virginia, for the year 1932, at more than its true and actual value.

That there is no evidence in the record to sustain the allegation of discrimination against the plaintiff in the assessment of its property in West Virginia as compared with the assessment of other railroad property in the state, or as compared with other than railroad property.

### Conclusion of Law.

We conclude as a matter of law that the plaintiff is not entitled to the relief prayed for in its bill and that the injunction prayed for by the plaintiff should be denied.