# Southern Railway Company et al. v. Commonwealth ex rel., etc.

(Decided March 27, 1931.)

EDWARD P. HUMPHREY, CHARLES W. MILNER and HUMPHREY, CRAWFORD & MIDDLETON for appellants.

FRANK DAUGHERTY, Attorney General, L. W. MORRIS, D. L. HAZELRIGG and J. P. HOBSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN— Affirming.

On March 8, 1920, the Commonwealth of Kentucky on relation of its then revenue agent filed two statements, or petitions, in the county court of Woodford county seeking to have assessed as omitted property a part of the franchise value of the Southern Railway Company which, it was alleged, had been omitted in the assessments made by the taxing authorities of the state of Kentucky. The first statement covered the years 1915, 1916, and 1917. The second statement covered the years 1918 and 1919. Apparently the reason for the separate statements was that the railroads of the nation had been placed in the hands of a Director General who was in charge of their operation for the two last mentioned years. By stipulation the two cases were heard together in the county court, and that court dismissed the petitions, or statements, which was a finding that the Commonwealth was not entitled to recover. This was done after the pleadings had been made up and proof had been heard. There was an appeal to the circuit court of Woodford county, and, upon hearing, that court dismissed the petitions, and an apeal was prosecuted to the Court of Appeals of Kentucky.

The cases had been consolidated and heard together in the lower court, and they were likewise considered and disposed of by one opinion in the Court of Appeals. See Com., by, etc., v. Southern Railway Co., 193 Ky. 474, 237 S. W. 11. It was insisted in that case by the Southern Railway Company that it could not be held responsible for any taxes that might be due, or that were not paid, by the Southern Railway Company in Kentucky, a separate corporation, or for any taxes that might be due or assessable against the Cumberland Railway Company, the Cumberland Railroad Company, or the Mobile & Ohio Railroad Company. It was the theory of the Commonwealth that these three railroad companies operating

lines of railway in Kentucky were railroads controlled by the Southern Railway Company, and therefore should have been considered as a part of its system, under the provisions of sections 4077-4091, Ky. Stats. It was the contention of the Commonwealth that the Southern Railway Company should have reported to the Kentucky taxing authorities as required by these sections, and that, after ascertaining the value of the entire system, including the four roads mentioned having their situs in Kentucky, there should have been an apportionment to Kentucky on a mileage basis, and that that apportionment should be the proportion of the entire value of the Southern Railway Company subject to franchise tax represented by the ratio that the mileage in Kentucky bore to the mileage of the entire system. The chief controversy was whether the Southern Railway Company should be required to pay taxes to the state of Kentucky because of these controlled roads within the state. It was held by this court that under the provisions of the sections of the Kentucky Statutes above cited, the Southern Railway Company controlled the Southern Railway Company in Kentucky, and that the mileage held in that name should be treated as a part of the mileage of the Southern Railway Company, and that the assessment should have been made on that basis. As the assessment had not been so made, this court directed such an assessment to be made, and that the Southern Railway Company should receive credit by the amount of franchise tax which had been previously paid on the assessment made against the Southern Railway Company in Kentucky. This court found, however, that the Mobile & Ohio Railway Company, the Cumberland Railway Company, and the Cumberland Railroad Company should not be treated as a part of the system of the Southern Railway Company, as there was no physical connection or unity of use between the properties of the Southern Railway Company and either of the other companies. The case was remanded to the circuit court, with directions that it proceed to ascertain the amount of intangible property which should be assessed for each of the years according to the prevailing rule of law upon the subject. The prevailing rule of law was to be found in the Statutes above cited, the opinions of this court, and the opinions of the Supreme Court of the United States.

On that appeal nothing was decided by this court other than the liability of the Southern Railway Company

to assessment according to the laws provided for the assessment of railroads. It had not made a report to the taxing authorities of Kentucky as required by Statutes, and it defended its failure to do so on the ground that it could not be held responsible, in any way, for taxes assessed against the Southern Railway Company in Kentucky, and that it could not be required to make a report to Kentucky because it controlled that road. It made the same contention as to the other three railroads. The court sustained its contention as to the other three railroads, but found against it as to the Southern Railway Company in Kentucky. When the court remanded the cases for further proceedings consistent with the opinion, there was nothing left to be done except for the Southern Railway Company to make a report as required by the Statutes including as a part of its mileage that of the Southern Railway Company in Kentucky. No question had arisen about the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company, because the Commonwealth did not know that it was a railroad controlled by the Southern Railway Company. No report had been made up to that time by the Southern Railway Company showing that it controlled lines of railroad in the state of Kentucky. That it controlled the Cincinnati, New Orleans & Texas Pacific Railway Company was a fact not developed up to the time that the matter was remanded to the circuit court of Woodford county. The Southern Railway Company in Kentucky had made a separate report to the taxing authorities and had been assessed thereon. The Cincinnati, New Orleans & Texas Pacific Railway Company had likewise made a report, and had been assessed. These railroads had not been assessed as a part of the Southern Railway System. Therefore the Southern Railway Company had failed to comply with the law in making its reports, or rather in its failure to make a report. The commonwealth was not contending that the Southern Railway Company should pay taxes on a basis different from other railroad companies in the state, but was making the contention that it should be assessed for taxation on the same basis as other railroads.

When the case was again taken up in the circuit court, the Southern Railway Company filed an amended answer on May 20, 1922. This amended answer first dealt with the years 1915, 1916, and 1917. It was alleged that

the Southern Railway Company in Kentucky had no physical connection with the lines of the Southern Railway Company, and that the nearest point to the Southern Railway Company in Kentucky where the Southern Railway Company owned, operated, leased, or controlled a line of railway was Harriman Junction, Tenn., on the line of the Cincinnati, New Orleans & Texas Pacific Railway Company, 141.8 miles south of Danville, Kentucky, and that the only other point of the last-mentioned railway company where the Southern Railway Company owned, operated, leased, or controlled any line of railroad was at Chattanooga, Tenn., 221.5 miles south of Danville, Kentucky. It was alleged that the Southern Railway Company during the years mentioned above did not either directly or indirectly own, operate, lease, or control the Cincinnati, New Orleans & Texas Pacific Railway Company, and that the only arrangement for the years mentioned under which the last-mentioned railroad company handled traffic for the Southern Railway Company was the same arrangement as existed between any independent connecting carrier; that is on an established basis of division of rates and fares as a connecting carrier. The amended answer then dealt with the Mobile & Ohio Railroad Company, and alleged that it was operated under its own management as an entirely independent line. The amended answer then set out the railway operating income of the Southern Railway Company in Kentucky for each of the above-mentioned years. The mileage of the Southern Railway Company in Kentucky, including trackage rights, was 164.64 miles, 239.19 miles in Indiana, and 162.89 miles in Illinois. The amended answer concluded with the allegation that the facts pleaded showed that it would be a violation of the Constitution of Kentucky and of the United States to assess against the Southern Railway Company any franchise tax for any of the years mentioned above, and that the effort to do so was an effort to bring into the state of Kentucky for purposes of taxation property not in Kentucky and values appertaining to property not in Kentucky and earnings derived from property not in Kentucky.

On the same day that the Southern Railway Company filed its amended answer, the Commonwealth of Kentucky filed a reply to the amended answer which may be construed as a traverse of the allegations in the

amended answer. On the same day there was a stipulation of facts agreed to by the parties. This stipulation is in ten paragraphs, and relates to the business relationship between the Southern Railway Company and the Southern Railway in Kentucky, the Mobile & Ohio Railroad Company and the Kentucky & Indiana Terminal Railroad Company at Louisville, and the Terminal Company at East St. Louis. The tenth paragraph in the stipulation is to the effect that the Southern Railway Company owned terminals, shops, and double tracks outside the state of Kentucky constituting an excess valuation for 1914 of $43,699,232.53, for 1915 of the value of $49,639,400.79, and for 1916 of $55,260,111.19. It was further stipulated that the traffic manager of the Cincinnati, New Orleans & Texas Pacific Railroad Company and the Mobile & Ohio Railroad Company would state that the traffic affairs of these railroad companies were as separate and distinct from those of the Southern Railway Company and administered as independently thereof as those of the Illinois Central Railroad Company, or the Louisville & Nashville Railroad Company.

In the suit to recover taxes claimed for the years 1917 and 1918, the Southern Railway Company filed an amended answer on the 20th day of May, 1922. In this amended answer it was admitted that the Southern Railway Company controlled the Cincinnati, New Orleans & Texas Pacific Railway Company through stock ownership, and that it had so controlled it since January, 1917. It was alleged that for the year ending June 30, 1917, the railway operating income of the Southern Railway Company and the lines owned, operated, leased, and controlled by it and by the Cincinnati, New Orleans & Texas Pacific Railway Company was $36,776,734.50; that the proportion of the mileage in Kentucky of the Southern Railway Company in Kentucky and the other railroads in Kentucky mentioned in the petition, and including the mileage in Kentucky of the Cincinnati, New Orleans & Texas Pacific Railway Company to the total mileage of the lines owned, operated, leased, and controlled by the Southern Railway Company including the mileage of the Cincinnati, New Orleans & Texas Pacific Railway Company, was 4.209 per cent.; that for the year ending June 30, 1917, the Southern Railway Company had on its lines outside of Kentucky double tracks, shops, terminals, etc., of the value of $67,832,331.71; that none of the lines in

644

Kentucky of any of the roads mentioned in the petition had any such double tracks, shops, or terminals; that the Cincinnati, New Orleans & Texas Pacific Railway Company had outside of Kentucky double tracks, shops, and terminals of the excess value of $1,019,582.15 over and above any double tracks, shops, or terminals which it had inside of the state of Kentucky. It was alleged that for the year ending June 30, 1917, the Southern Railway Company in Kentucky and the other railroads in Kentucky mentioned in the petition, including the Cincinnati, New Orleans & Texas Pacific Railway Company, filed with the Kentucky State Railroad Commission, the State Board of Valuation and Assessment, and the State Tax Commission of Kentucky full reports showing the result of all the operations of each of the lines of railroad as required by statute, and each company paid the full tax assessed on its tangible and intangible property; that for the year mentioned the Cincinnati, New Orleans & Texas Pacific Railway Company paid to the state of Kentucky a franchise tax on a franchise valuation of $9,181,368; and that the other railroads in Kentucky mentioned in the petition paid taxes on a franchise valuation of $3,500,053.

It alleged that for the year ending December 31, 1918, the railway operating income of the Southern Railway Company and of the Cincinnati, New Orleans & Texas Pacific Railway Company was $36,017,327.13; that the proportion of the mileage in Kentucky of the Southern Railway Company in Kentucky and the other railroads in Kentucky mentioned in the petition including the mileage in Kentucky of the Cincinnati, New Orleans & Texas Pacific Railway Company to the total mileage of the lines owned, operated, leased, and controlled by the Southern Railway Company including the mileage of the Cincinnati, New Orleans & Texas Pacific Railway Company was 4.273 per cent.; that for the year ending December 31, 1918, the Southern Railway Company had on its lines outside of Kentucky double tracks, shops, terminals, etc., of the value of $80,160,065.06 (printed in answer $8,160,065.06); that none of the railroads mentioned in the petition in Kentucky had any such double tracks, shops, terminals, etc.; that the Cincinnati, New Orleans & Texas Pacific Railway Company had outside of Kentucky double tracks, shops, terminals, etc., of the excess value of $2,046,735.53, over and above the value of any

double tracks, shops, or terminals inside of Kentucky. It was alleged that for the year ending December 31, 1918, the Southern Railway Company in Kentucky and the other railroads in Kentucky mentioned in the petition, including the Cincinnati, New Orleans & Texas Pacific Railway Company, filed with the Kentucky Railroad Commission, the State Board of Valuation and Assessment, and the State Tax Commission of Kentucky full reports showing the result of all the operations of each of the lines of railroad as required by statute, and that each company paid the full tax assessed on its tangible and intangible property; that for the year the Cincinnati, New Orleans & Texas Pacific Railway Company paid to the state of Kentucky a franchise tax on a franchise valuation of $9,173,208; and that the other roads in Kentucky mentioned in the petition paid taxes on a franchise valuation of $3,500,512. It was then alleged that it would be a violation of the constitutional provisions in the State and Federal Constitutions to assess any additional property against either of the roads mentioned.

A reply was filed to the last-amended answer which brought into the case no new element. Then followed another stipulation of facts as applicable to the case for the purpose of a trial in the circuit court. It had been agreed that both of the cases should be heard together. This stipulation agreed that from January, 1917, the executive and other officers of the Southern Railway Company were the corresponding officers of the Cincinnati, New Orleans & Texas Pacific Railway Company, and that there had been since that date unification and consolidation for supervision of operation of the Cincinnati, New Orleans & Texas Pacific Railway Company into the Southern Railway Company System; that the Cincinnati, New Orleans & Texas Pacific Railway Company owned and operated a line of railroad in the state of Kentucky 197.5 miles long, which passed through certain mentioned counties. It was also agreed that it owned excess outside valuation of $1,019,582.15 for the year 1917, and $2,046,735.53 for the year 1918; that the net railway operating income was as pleaded in the last-amended answer; that its total mileage for 1917 and 1918 was 337.27 miles both in and outside Kentucky, and that the additional mileage should be added to the system mileage of the Southern Railway Company; that for each of the

years mentioned it reported to the state tax commission in its own name and was taxed on the basis of the assessment set out in the amended answer; that the Southern Railway Company owned terminals, shops, and double tracks outside of the state of Kentucky which constituted an excess valuation for 1917 of $80,160,065.06, and for the year of 1918 of $81,845,408.72. It was agreed that for the year 1917 the property of all railroads in Kentucky was equalized for taxation on a basis of 75 per cent., and for 1918 on a basis of 85 per cent.

This stipulation was a substantial admission of what was written into the judgment that was entered on the same day if the property of the railroad companies owning lines in Kentucky should be treated as a part of the Southern Railway Company System. No other construction can be placed upon that stipulation. On these facts the circuit court found that there should have been an assessment against the Southern Railway Company for the year ending June 30, 1915, of $972,662, as omitted property, and it was directed that for county taxation it be distributed among the counties on the basis of $7,669.75 per mile. For the year ending June 30, 1916, no additional assessment was made. For the year ending June 30, 1917, it was found that a part of the franchise of the Southern Railway Company was omitted from assessment, and that the part so omitted was of the value of $2,018,561, and it was assessed at that sum for state and county taxation. The assessment was ordered distributed among the counties where the property was subject to taxation on the basis of $15,916.99 per mile. For the year ending June 30, 1918, it was adjudged that a part of the franchise of the Southern Railway Company was omitted from assessment and that the part so omitted was $1,730,090, and it was directed that that sum be assessed for state and county taxation, and that it be distributed among the counties on the basis of $5,334.55 per mile. For the year ending June 30, 1919, it was adjudged that a part of the franchise of the Southern Railway Company was omitted from assessment, and that the part so omitted was of the value of $3,028,592, and it was ordered that it be assessed for state and county taxation, and that the assessment be distributed among the counties on the basis of $9,328.34 per mile. A 20 per cent. penalty was allowed in favor of the Commonwealth, three-fourths of which was allowed the officers who prosecuted the

action, and the other one-fourth to the Commonwealth itself.

That these assessments were correct was shown by the stipulation on which they were based. No question was left open except whether the lines in Kentucky were a part of the Southern Railway system, and probably the question of limitations. The usual method allowed by the Statutes, and approved by this court and the Supreme Court, was followed in seeking the assessments.

There was an appeal to the Court of Appeals, and, on June 13, 1924, this court handed down an opinion in which the judgment was reversed in so far as it made an assessment against the Southern Railway Company for the years 1914 and 1916, but the assessments made for the year 1917, that is, for the year ending June 30, 1918, and the year ending June 30, 1919, were affirmed. 204 Ky. 388, 264 S. W. 850.

This court affirmed the judgment in so far as it made assessments for the years 1917 and 1918 without argument, or elaboration, because, as was stated, it was admitted that the assessments for these years were made in accordance with, and were concluded by, the former opinion. This statement in the opinion shows that it was recognized that the circuit court had properly assessed the property for taxation for these years on the facts admitted in the stipulation considered as evidence in the case. The sole ground urged for reversal as to the other years was that for those years there was no such unity of use and operation between the lines of the Southern Railway owned, operated, leased or controlled in Kentucky and its lines outside of Kentucky as to permit the assessment of its franchise upon the theory that all of its owned and controlled lines in and out of the state constituted a single system. It was the contention that its line in Kentucky for these years had neither physical nor operative connection with the outside lines unless with its line running from New Albany, Ind., to East St. Louis, Ill., and therefore to apply the notion of unity to all of its lines under such circumstances would be a violation of the Fourteenth Amendment of the Constitution of the United States, in that it would bring into Kentucky for taxation purposes values wholly outside of the state.

This court reversed the judgment directing an assessment against the Southern Railway Company for

the years 1914 and 1916, not because there was not a physical connection between the lines of the Southern Railway Company and the lines of the Southern Railway Company in Kentucky, but because there was not such a unity of use as authorized an assessment of the properties of the Southern Railway Company in Kentucky as a part of its system of mileage until January, 1917, when the Southern Railway Company acquired control of the Cincinnati, New Orleans & Texas Pacific Railway and thereby unified all of its holdings into a single unit of use and management. In the opinion on the first appeal the court had under consideration only one question, and that was whether the unifying facts shown by the record were such as to treat the lines of the four railroads in Kentucky owned, operated, leased, or controlled by the Southern Railway Company as a part of its system mileage which required the Southern Railway Company to make a report to the taxing authorities of Kentucky, and to make necessary an assessment against that company the same as against other companies owning railroad lines both within and without the state of Kentucky. This court found that the unifying facts were such as to establish that the Southern Railway Company in Kentucky was an integral part of the Southern Railway Company, requiring an assessment against the last-mentioned company. But the court found that the facts were not sufficient to include in the mileage of the Southern Railway Company as a part of its system mileage the Cumberland Railroad Company, the Cumberland Railway Company, and the Mobile & Ohio Railroad Company.

The only contention made in that case by the Southern Railway Company was that neither its ownership of a majority or even all of the stock in the Southern Railway Company in Kentucky, nor its maintenance of an office in Kentucky for the purpose of soliciting and routing freight and passengers to their destination, constituted doing business in the state so as to render it liable for taxes sought to be imposed. That was the only question made at the time, or ever made. There was no pleading that the Southern Railway Company should not pay taxes in addition to those already erroneously paid because the lines of the Southern Railway Company in Kentucky were not as valuable mile for mile as the lines outside of Kentucky, or, to put it another way, that the line mile for mile of the Southern Railway Company in

Kentucky was of less value than the average value of the lines mile for mile of the entire system. Such a question was not heard of or considered, as there was nothing in the pleadings, proof or argument to suggest such a matter. It is true that there was evidence in the nature of an exhibit from which it might have been inferred that the Southern Railway in Kentucky was not a profitable branch of the Southern Railway Company. But that point was not raised on the first appeal. The first appeal decided against the contention which was made; that is, that the Southern Railway Company should make no report and pay no taxes to the state of Kentucky because of its control of the Southern Railway Company in Kentucky.

The mileage of the Cincinnati, New Orleans & Texas Pacific Railway Company was not considered at all in the first opinion of this court. That opinion did not affect any question involving the result flowing from the control of the Cincinnati, New Orleans & Texas Pacific Railway Company by the Southern Railway Company. Nothing was precluded by that opinion other than questions which were actually before the court for decision, or which might have been raised on the record. The principles announced in that opinion applied alike to the control of the Cincinnati, New Orleans & Texas Pacific Railway Company, or any other lines controlled by the Southern Railway Company in Kentucky. The specific question decided in the first opinion was that three of the railroad companies mentined in the petition should not be treated as a part of the Southern Railway Company for taxation purposes in the state of Kentucky, and that the fourth should be so treated. Neither of the four railroad companies considered was the Cincinnati, New Orleans & Texas Pacific.

When the second appeal reached this court, a different state of facts was presented, in that it was shown that in January, 1917, the Southern Railway Company has assumed control of the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company. This record made it entirely clear that the Southern Railway Company in Kentucky was a part of the system of the Southern Railway Company because of its actual physical connection with the Cincinnati, New Orleans & Texas Pacific Railway Company, which had become a part of the system mileage of the Southern Railway Company.

When this court affirmed the assessment made against the Southern Railway Company for the years 1917 and 1918, loosely speaking, it did so because of the fact that it was admitted that the assessment had been made in accordance with the principles announced in the former opinion. The former opinion had not instructed the circuit court to make an assessment in any particular manner. The direction was that the assessment should be made in the usual manner as required by the Statutes as construed by the courts. It was a simple matter and well understood by the attorneys representing the respective parties. No question had been raised by the amended answer filed after the case had been sent back to the circuit court other than that it was improper to treat the lines in Kentucky, that is, the lines of the Cincinnati, New Orleans & Texas Pacific, as a part of the system mileage of the Southern Railway Company for taxation. There was no plea to the effect that the lines of that company were more or less valuable mile for mile than the average value mile for mile of the entire system. The point, however, was not pressed, as it was admitted that the assessment had been made as directed by the court in its former opinion, which was, in effect, an admission that the assessment for the years 1917 and 1918 had been made in accordance with the provisions of the Statutes as construed by the courts.

In the opinion on the second appeal, the court found, as in the opinion on the first appeal, that there was such a physical connection between the Southern Railway Company in Kentucky and the Southern Railway Company as would authorize the assessment of the mileage of the Southern Railway Company in Kentucky for the years prior to to 1917, but that there was no such unity of use as would authorize the assessment of the Southern Railway Company in Kentucky until it obtained control of the Cincinnati, New Orleans & Texas Pacific Railway Company in 1917. The effect, therefore, of the second opinion, was that there could be no assessment for the years involved in the first opinion, or rather that, as the facts were developed, there could have been no assessment if there had been no change in the facts after the first opinion was rendered because there was no such unity of use as would have authorized an assessment of the Southern Railway Company in Kentucky,

and it necessarily would have followed that the assessment of the units in Kentucky separately was proper. This was prevented by reason of the new fact that was made to appear in the amended answer and in the stipulation. That is that the Southern Railway Company acquired control of the Cincinnati, New Orleans & Texas Pacific Railway Company in January, 1917.

Although the amended answer had set up the control of the Cincinnati, New Orleans & Texas Pacific Railway Company by the Southern Railway Company after the return of the case to the circuit court, there was no amended petition asking an additional assessment by reason of the control of the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company. That important fact evidently escaped the attention of the attorneys representing the commonwealth. The circuit court entered a judgment pursuant to the stipulation, and the judgment was admittedly correct for the years 1917 and 1918, and the assessments for these years were not called in question on the second appeal by any pleading or argument advanced by counsel for the Southern Railway Company. The only plea invoking the Fourteenth Amendment to the Constitution of the United States in connection with the Cincinnati, New Orleans & Texas Pacific Railway Company must be found in the amended answer filed on May 20, 1922, which related to the assessments for the years 1917 and 1918. The facts in relation to the Cincinnati, New Orleans & Texas Pacific Railway Company were fully set out in that amendment. It was then alleged that the Cincinnati, New Orleans & Texas Pacific Railway Company had made report to the taxing authorities of Kentucky for these two years, and that an assessment had been made against it. The invoking of the Fourteenth Amendment by that plea can be construed only to mean that it would be a violation of the Fourteenth Amendment to hold that the Cincinnati, New Orleans & Texas Pacific Railway Company was so controlled by the Southern Railway Company as to require the Southern Railway Company to report to the taxing authorities of Kentucky for assessment of its properties in Kentucky, or that it would be violative of the Fourteenth Amendment to require an assessment of the properties of the Southern Railway Company when the Cincinnati, New Orleans & Texas Pacific Railway Company had made a report and had paid taxes on the assessment

made against it as an independent unit. Neither of these points were pressed in the argument before the Court of Appeals on the second appeal, and there was no basis for any such contention on that appeal. No point was made based on the fact that the commonwealth failed to amend its petition asking that there be an additional assessment because the Southern Railway Company had obtained control of the Cincinnati, New Orleans & Texas Pacific Railway Company in January 1917.

A petition for a rehearing, or modification, of the second opinion was filed by the Southern Railway Company and that petition raises no question directly, or by inference, that the opinion was erroneous because there had been an assessment against it that was unfair or discriminatory because the mileage in Kentucky was not of equal value mile for mile with the system mileage. Only two grounds were urged for a rehearing or modification. The first was that the judgment of the circuit court made an assessment against James C. Davis, Director General, and the Southern Railway Company for the years ending June 30, 1918 and 1919, when the assessment should have been made against James C. Davis, Director General, alone. The second ground was that the judgment assessing additional property for these two years fixed a penalty to be paid by both of the defendants upon the taxes due, and that no penalty should have been allowed. A reply was filed by the commonwealth to the petition for a rehearing, or modification, and the Southern Railway Company filed a response wherein it was said:

"It will be recalled that on petition for rehearing two points were made:

"1. That the judgment for the years during which the railroad was being operated by the Director General should have been against that officer alone, and that the inclusion of the Southern Railway Company in this judgment was erroneous.

"2. That no penalty could be assessed against the Director General."

No other objection was offered to the opinion of this court on the second appeal, and the relief asked for in the petition for a rehearing and modification was denied by this court.

In the assignment of errors preparatory to an appeal to the Supreme Court of the United States, the

Southern Railway Company assigned four specific errors on which it relied. The first was that the assessment should have been against the Director General alone; the second was that the court erred in holding that the Southern Railway Company in Kentucky was in fact and in law the same as the Southern Railway Company; the third was that the court erred in holding that there was any such connection between the lines of the Southern Railway Company in Kentucky and the lines of the Southern Railway Company south of Danville, Ky., as justified the assessment of a franchise tax against .the Southern Railway Company based upon the earnings of its system south of Danville, and in so holding there was imposed, in effect, a tax against the Southern Railway Company on account of property owned by it outside of the state of Kentucky, and that such an imposition of the tax was a violation of the Fourteenth Amendment of the Constitution of the United States: and the fourth was that the court erred in holding that a penalty should' be adjudged against the Southern Railway Company for failure to assess its property during the years in controversy when the property was at the time in the control of the Director General.

It will be observed that in the assignment of errors there was no complaint in respect of the value of the mileage of the Southern Railway Company in Kentucky, and there was no reference to the Cincinnati, New Orleans & Texas Pacific Railway Company at all. For the first time counsel for appellant appear to have gone back to the petitions and amended petitions and ascertained that no assessment was sought against the Southern Railway Company because of its control of the Cincinnati, New Orleans & Texas Pacific Railway Company.

Up to this time we have referred to the Southern Railway Company alone, as there was no conflict between the interest of that company and the Director General, and where we have referred to the Southern Railway Company for the years 1917 and 1918 the reference was to the Director General as well. The Director General, however, filed a separate assignment of errors. Two additional errors were alleged in his assignment: One that the court erred in holding that there was any such connection between the properties of the Southern Railway Company in Kentucky and the properties of the Southern Railway Company south of Chattanooga by reason of assumed connection of the proper-

ties of the Southern Railway Company in Kentucky at Danville and the properties of the Southern Railway Company at Chattanooga through the properties of the Cincinnati, New Orleans & Texas Pacific Railway Company extending from Danville to Chattanooga, as justified the assessment of a franchise tax against the Southern Railway Company based upon the earnings of its system south of Danville, and that the effect of making such an assessment was to impose a tax against the Southern Railway Company on account of property owned by it outside of the state of Kentucky. The other additional error was that the court erred in approving an assessment of the franchise of the Southern Railway Company by taking into consideration the earning of its property south of Chattanooga because to do so was to make an assessment in Kentucky of property outside of the state of Kentucky.

·In neither of the assignments was there any reference to the earnings, or value, of the lines of railroad in Kentucky controlled by the Southern Railway Company.

The opinion of the Supreme Court reversed the case, 274 U. S. 76, 47 S. Ct. 542, 544, 71 L. Ed. 934, not on account of either of the errors assigned, but on two grounds which it is necessary to notice for the purpose of ascertaining whether the contention for the commonwealth has any basis on which to rest. It was found by the Supreme Court that the Court of Appeals rightly adjudged that a state may tax property permanently within its jurisdiction belonging to one domiciled elsewhere and used to carry on commerce among the states. It was said, in effect, by the Supreme Court, that the Court of Appeals had rightly found that, where property is a part of a system and has its actual use only in connection with other parts of the system, that fact may be considered, although other parts of the system are outside of the state; that the Court of Appeals was right in finding that a state may not tax property outside of its jurisdiction belonging to one domiciled elsewhere; and that the mileage basis of apportionment could not be adopted in taxation of railroad franchises, where the result is shown to be arbitrarily excessive.

Having found that the Court of Appeals correctly declared the principles, the question before the Supreme Court, so it was said by that court, was whether the state made valid application of the governing principles.

That court said, without elaboration, or explanation: "There was no claim for any taxes in respect of the lines of the Cincinnati, New Orleans & Texas Pacific."

It was said that that company had also reported its earnings and paid taxes on its tangible and intangible properties in Kentucky, and that the taxes so paid were based on values per mile in excess of average value per mile for the system arrived at by capitalization of net railway income in accordance with the method applied by the state. Then followed this statement: "No part of the amounts adjudged to have been omitted could properly be assigned thereto."

We are left in doubt as to whether the Supreme Court meant that no part of the amounts adjudged to have been omitted could properly be assigned to the Cincinnati, New Orleans & Texas Pacific Railway Company because there was no claim of any taxes in respect of the lines of that company, or that no part of the amounts could properly be assigned thereto because that company had reported and paid taxes on its property as indicated. The Supreme Court had well stated the method of assessing property by the taxing authorities in the state of Kentucky pursuant to the Statutes as construed by this court and the Supreme Court of the United States. That court knew that under the Statutes as so construed the assessment of property against a railroad company always resulted in distributing the taxes based thereon over all of the lines of the railroad on the mileage basis. It appears to us, therefore, that, construing the opinion of the Supreme Court in the light of the construction placed upon the Statutes of this state by the Court of Appeals and that court itself, the meaning of what was said was that none of this additional assessment could be apportioned to the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company because there was no claim for any taxes in respect of the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company.

When the Supreme Court reached that conclusion, it followed that the taxes based on the additional assessments must necessarily be distributed over the lines of the Southern Railway Company in Kentucky, and that such an assessment for distribution over its lines would be such an increase as to show that the assessment was excessive and arbitrary. Undoubtedly the Supreme

Court was correct in holding that these increased assessments could not be justified if they were based alone on the mileage of the Southern Railway Company in Kentucky. The values had been drawn into Kentucky not alone by reason of the mileage of the Southern Railway Company in Kentucky, but because the mileage of the Cincinnati, New Orleans & Texas Pacific Railway Company had been considered in arriving at the apportionment unit. In fact the mileage in Kentucky of the Mobile & Ohio, the Manchester Railroad Company, and the Manchester Railway Company had also been used in arriving at the proper apportionment unit on the mileage basis. It is true, nevertheless, that it was an assessment against the Southern Railway Company, and, regardless of whether the taxes were distributed over the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company and the lines of the Southern Railway in Kentucky, made not the slightest difference in the amount that must be paid by the Southern Railway Company. But, as there was no claim for taxes in respect of the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company the mileage of that company should not have been considered in arriving at the apportionment unit on the mileage basis. Clearly that was the basis of the decision of the Supreme Court that the assessment as made brought into Kentucky values that could not be properly allocated to the state.

If the question had been raised by proper pleadings or had been brought to the attention of the Court of Appeals in a proper manner when considering the second appeal, doubtless this court would have reached the same conclusion on the point as was reached by the Supreme Court.

The other reason for reversal given by the Supreme Court was that the apportionment unit was not correctly arrived at. There can be no argument on that point. As indicative of what the Supreme Court meant in holding that the entire assessments were by reason of the mileage of the Southern Railway Company in Kentucky when it said there was no claim for taxes in respect of the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company, we call attention to the language used by that court in its consideration of the methods followed in arriving at the apportionment unit on a mileage basis. The Court said: "And, for the reasons stated,

the mileage of the Cincinnati, New Orleans & Texas Pacific should not have been included.''

As there was no claim for taxes in respect of the lines of that company, it followed, as a matter of course, that the mileage owned by that company should not have been used to increase the proportion of the lines owned, operated, leased, or controlled in Kentucky to the total mileage of the system. With that mileage omitted, there is no room for argument that would sustain the assessments as made. Necessarily the enforcement of the taxes so assessed would violate the due process clause of the Fourteenth Amendment.

When the opinion of the Supreme Court was filed in the Court of Appeals, that court directed a reversal of the judgment of the circuit court, and, when the case was remanded to the circuit court, the commonwealth, perceiving that it had made no claim for taxes in respect of the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company, filed an amended petition. The Southern Railway Company filed an answer, and a reply was filed, additional stipulations were filed, and a second amended petition correcting a clerical error in the first. In the first amended petition allegations were made at length showing that the commonwealth was making claim for taxes in respect of the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company. The answer to that amended petition was a traverse, and, in additional paragraphs, there were affirmative pleas not material, as the stipulation took care of the facts. But the Southern Railway Company attempted to rely upon the opinion of the Supreme Court of the United States as a bar to any further right of action in the Commonwealth to seek a recovery of taxes against it. In another paragraph there was a plea of limitation, on the ground that the amended petition was filed more than five years after the reports and assessments should have been made. A demurrer was sustained to the plea of limitation. The new stipulation of facts was substantially the same as the one used as a basis for the judgment of the circuit court immediately before the second appeal to the Court of Appeals. The case was submitted to the circuit court for judgment, and the court rendered the same judgment that had been previously entered, and the appeal now before us is from that judgment.

It is the contention of counsel for the Southern Railway Company that the opinion of the Supreme Court was

based upon exactly the same facts that now appear of record. In view of what has been said in this opinion, we cannot agree with that contention. In the amended petition which was filed making claim for taxes in respect of the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company a new question was presented. It cannot be said now that there is not any claim for taxes by reason of the control of the Cincinnati, New Orleans, & Texas Pacfic Railway Company.

There is no question now about the right to consider the mileage of the Cincinnati, New Orleans & Texas Pacific Railway Company in arriving at the proper apportionment unit on a mileage basis. It cannot now be argued that the assessment has been made solely because of the lines of the Southern Railway Company in Kentucky and that the taxes imposed are because of the lines of that company alone.

The Supreme Court correctly pointed out that the proportion of mileage in Kentucky to the total system mileage was not correctly stated in the opinion of the Court of Appeals of Kentucky. That was true because no objection was made to the apportionment unit. When the case was before the circuit court for a final determination, the Commonwealth through its attorneys, attempted to eliminate the mileage of the Mobile & Ohio Railroad Company, the Manchester Railroad Company, and the Manchester Railway Company, and tendered a calculation showing the proper basis of apportionment with these roads eliminated. If the mileage in Kentucky should be eliminated, the mileage outside of Kentucky also had to be eliminated. If the mileage of these railroads had been eliminated, the result would have shown a less assessment for the year 1917, and a greater assessment for the year 1918, and, on the whole, the Southern Railway Company would have been the loser if the assessments should stand. Because of that the commonwealth objected and excepted to so much of the judgment as included the mileage of these railroads. But there is no cross-appeal. The Southern Railway Company excepted to the judgment as a whole, but, if the exception on that point should be sustained, it would result in a greater assessment for the two years, and a greater amount of taxes which would have to be paid by the Southern Railway Company than to allow the judgment to stand as it is. The appellants cannot complain.

With that out of the way, we will give a little further consideration to the merits of the case. There had been much litigation over the assessments of railroad properties in Kentucky prior to the Kentucky Railroad Tax cases decided by the Supreme Court in 1917. Louisville & N. R. Co. v. Greene, 244 U. S. 522, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97. Since that time there has been no litigation over the assessments of railroad property. The plan finally devised by the taxing authorities in conformity with the opinion of the Supreme Court has been carried on without question either by the state or the railroad companies. The capitalization of net income has generally been followed. There has been an effort to eliminate the excess values outside of Kentucky before making an apportionment of the values arrived at to Kentucky. The excess values were eliminated by the stipulation in this case. The asssessment after the elimination of excess values outside of the state has been made on a mileage basis. Let us see what brought about the difficulty with the assessments made for the years 1917 and 1918. The Southern Railway Company controlled the Southern Railway Company in Kentucky and the Cincinnati, New Orleans & Texas Pacific Railway Company during these two years. It was the duty of the Southern Railway Company to make a report giving its total mileage for all roads owned, operated, leased, or controlled and the net income from such roads. It failed to do that, and allowed the two controlled roads mentioned to make separate reports. If the Southern Railway Company had made the reports as required by the Statutes and the same method of assessment had been pursued, the assessments for the years mentioned would have been increased exactly by the amount shown by the judgment of the circuit court as omitted values. The Southern Railway Company then would have paid taxes on that basis. No process of reasoning can escape the conclusion that the Southern Railway Company has not paid taxes for these two years on the same basis as other railroad property has been assessed for the same years. This was brought about through the failure of the Southern Railway Company to comply with the law. Some of the larger systems of railways operating in Kentucky own, lease, operate, or control mileage that does not yield a large income, but, after eliminating the excess values outside of Kentucky, this mileage has been considered of equal value

mile for mile with the other mileage of the system. To allow the Southern Railway Company to escape these additional assessments is to allow it to escape the payment to the state and counties affected of taxes undoubtedly just if the assessments of railroad properties in Kentucky for the last thirteen years have been correctly made, and that they have been correctly made is shown by the complete satisfaction of the railroad companies with the assessments so made. If the construction placed upon the opinion of the Supreme Court by counsel for the Southern Railway Company is the correct one, then the entire system for the assessment of railway property in Kentucky is destroyed, and confusion will prevail where there has been order and satisfaction. It is because of the importance of the question and the consequences which would result from sustaining the contention of appellants that we have given to the opinion of the Supreme Court that careful attention which it deserves, and have come to the conclusion that the opinion was based upon the idea that ''there was no claim for any taxes in respect of the lines of the Cincinnati, New Orleans & Texas Pacific.''

As there was no claim for taxes in respect of the lines of that railroad, the lines should not have been considered in determining the values that should be apportioned to Kentucky as was found by the Supreme Court, The amended petition made claim for taxes in respect of the lines of that railroad.

Under the authority of Mutual Life Insurance Co. v. Hill, 178 U. S. 347, 20 S. Ct., 914, 44 L. Ed. 1097, Messinger v. Anderson 225 U. S. 444, 32 S. Ct. 739, 56 L. Ed. 1152, Wolff Packing Co. v. Court of Industrial Relations, 267 U. S. 562, 45 S. Ct. 441, 69 L. Ed. 785, and the cases cited in these opinions, we have reached the conclusion that a new state of facts is presented to us, and that the judgment of the circuit court should be affirmed. Unless it should be reversed on account of one or more of the collateral grounds relied on, which we will now proceed to consider.

The first one of these collateral grounds is that the judgment for taxes should have been against the Director General of Railroads alone and not against the Southern Railway Company. Counsel cite the Act of Congress of March 21, 1918, U. S. Comp. St. sec. 3115¾a et seq., 40 Stat. 451. That act, according to its terms, pro-

hibits any construction that will amend, repeal, impair, or affect the existing laws or powers of states in relation to taxation except when such laws, powers, or regulations may affect the transportation of troops, war materials, government supplies, or the issue of stocks and bonds. So far as the taxes due the state of Kentucky are concerned, the Southern Railway Company must be held responsible. If it has any claim against the United States government growing out of the payment of the taxes, that is another matter.

The other collateral grounds is that no penalty should be imposed on the Director General of Railroads. Section 4241, Ky. Stats., allows a penalty of 20 per centum on the amount of taxes due and cost of assessment except where the property shall have been duly listed by the owner thereof. Three-fourths of this penalty must be paid to the officers prosecuting the action to have the omitted property assessed. The one-fourth is part of the state treasury. This property was not assessed because the Southern Railway Company failed to make the reports required by the Statutes. Clearly it is a case where the penalty may be imposed. The state cannot compel the government of the United States to pay the taxes or the penalty, but it has a lien on the property which should have been assessed to secure the payment of the taxes. The Federal Control Act, supra, did not repeal, impair, or affect the existing laws of the states in relation to taxation. Therefore we do not agree with counsel for appellants that the federal act has the effect of preventing the assessment of the penalty against the owner of the property. The case of Missouri Pacific Railway Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087, relied on by counsel for appellants, was not a tax case. The penalty therein considered was a penalty for the nonpayment of wages. The judgment for wages was for $50, and the penalty was for $390. The Supreme Court held that, by whatever name it may be called, if the element of punishment clearly predominates and Congress has not given its consent that such suits may be brought against the United States, there could be no penalty imposed against the Director General. Another case relied on by counsel for appellant is Norfolk-Southern R. Co. v. Owens, 256 U. S. 565, 41 S. Ct. 597, 65 L. Ed. 1093. That was a case where a judgment had been obtained against the railroad company for the amount of $21 because of undue delay in making delivery of an

662

intrastate shipment. At the time the railroad was in the possession and control of the government and operated by the Director General. The court followed the Ault case, supra, and held that no penalty could be imposed. The penalty assessed under the Statutes of Kentucky against delinquent taxpayers is not one where the element of punishment predominates. The circuit court was not in error in allowing the penalty.

On the whole case, we have reached the conclusion that the judgment should be, and it is hereby, affirmed.

Whole court sitting.